**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

Robert Cardano,

      Plaintiff,

      -vs-

King David Post Acute Nursing & Rehabilitation, LLC,

      Defendant.

Case No. 1:25-cv-1523-PAB

JUDGE PAMELA A. BARKER

MEMORANDUM OPINION & ORDER

Currently pending before the Court is Defendant King David Post Acute Nursing & Rehabilitation, LLC's ("King David") Motion to Compel Arbitration and Dismiss the Amended Complaint[1] or, in the alternative, to Stay Proceedings Pending Arbitration (the "Motion"). (Doc. No. 11.)  Plaintiff Robert Cardano ("Plaintiff") filed an Opposition to the Motion on February 19, 2026, to which King David replied on March 12, 2026. (Doc. Nos. 13, 15.)  For the following reasons, the Motion (Doc. No. 11) is GRANTED.  This case is hereby stayed pending arbitration.  The Clerk is instructed to administratively close this case.  Within 30 days of the final ruling by the arbitrator, the parties shall file a joint status report regarding the status of this case and the final ruling by the arbitrator.

## I.    Background

On July 22, 2025, Plaintiff filed his Complaint against King David. (Doc. No. 1.)  Therein, Plaintiff brings claims under the FMLA, the ADA, ERISA, and O.R.C. § 4112.02 against King David, which he alleges was his former employer. (*Id.*)  On November 5, 2025, King David filed its Answer.

---

[1] There is no Amended Complaint in this case.

(Doc. No. 9.)  Therein, King David asserts as its first affirmative defense that "[t]he claims alleged in the Complaint are subject to a binding and enforceable arbitration agreement."  (*Id.* at ¶ 78.)

On December 11, 2025, the Court conducted a Case Management Conference and entered the following minutes:

> Case Management Conference held on 12/11/2025. A telephone Case Management Conference was scheduled for today, and Attorneys David N. Truman and Christina M. Royer joined the call on behalf of Plaintiff and Attorney Ryan Smith joined the call on behalf of Defendant. The Court advised counsel that it had reviewed the Report of Parties' Planning Meeting ("RPPM") that was filed on December 4, 2025 and noted that it understood that the parties were trying to reach an agreement to arbitrate this matter, Counsel confirmed that they have been unable to reach an agreement. Accordingly, the Court advised counsel that in lieu of evaluating the recommendations and proposed dates set forth in their RPPM, it would be more appropriate to set a briefing schedule regarding a motion to compel arbitration. Counsel agreed. The Court set a deadline of January 8, 2026 by which Defendant must file its motion to compel arbitration. Plaintiff's opposition to the motion to compel must be filed within 30 days of the filing of the motion to compel, and any reply by Defendant must be filed within 14 days of the filing of Plaintiff's opposition. It is so ordered.

On January 8, 2026, King David filed its Motion.  (Doc. No. 11).  Attached to the Motion is the Declaration of Tracy Etling.  (Doc. No. 11-2.)  Therein, Ms. Etling avers that she is "the Director of Pharmacy for Refuah Pharmacy, LLC (the 'Pharmacy')."  (*Id.* at ¶ 2.)  She further avers that "[o]n December 8, 2023, in connection with his employment by the Pharmacy, Plaintiff executed an Arbitration Agreement (the 'Agreement')."  (*Id.* at ¶ 3.)  Ms. Etling avers that a true and accurate copy of the Agreement is attached to her Declaration as Exhibit A.  (*Id.*)

The Agreement is entitled "Arbitration Agreement." (*Id.* at PageID #75.)  The title is in all caps, bolded, and underlined in a large font.  (*Id.*)  The first section of the Agreement is set forth immediately below the title and reads:

> Arbitration Explained: Arbitration is a specific process of dispute resolution instead of utilizing the traditional state or federal court system. Instead of a judge and/or

2

jury determining the outcome of a dispute, a neutral third party ("arbitrator") chosen by the parties to this agreement renders the decision, which is binding on both parties. Generally, an arbitrator's decision is final and not open to appeal. The Arbitrator will hear both sides of the dispute and render a decision based on fairness, law, common sense and the rules established by the arbitration's association selected by the parties. Mandatory arbitration has been selected with the goal of reducing the time, formalities and cost of utilizing the court system. **This Arbitration Agreement is between the ("Facility") and the employee who executes the agreement and shall apply to any and all claims outlined herein, including claims arising prior to the date of execution of this agreement.** This agreement is subject to the Federal Arbitration Act and **any dispute regarding arbitrability shall be delegated to the arbitrator referenced herein in section G.** Consideration for this Agreement shall include offer of employment, continuing employment and receipt of any benefits not legally required by law.

(*Id.* (emphasis added).)

"Facility" is defined in the Agreement as "Healthcare Payroll 2 LLC." (*Id.*)  The Agreement provides that "[i]t is agreed that any claim the Employee may have against any affiliate of the Facility is included within the scope of this arbitration section." (*Id.* at PageID #78.)  Ms. Etling avers that "Healthcare Payroll 2 LLC is the special purpose limited liability company that the Pharmacy utilizes for its payroll services" and that "[t]he Pharmacy is a limited liability member of Healthcare Payroll 2 LLC." (*Id.* at ¶ 4.)  There is nothing in the record establishing the relationship, if any, between Healthcare Payroll 2 LLC and King David.

The Agreement also has a 30-day opt-out provision providing, in relevant part, that "Employee or, in the event of Employee's incapacity, Employee's authorized representative have the right to rescind this arbitration agreement by notifying the Facility in writing within thirty (30) days of the employment date." (*Id.* at PageID #77.)  Additionally, the Agreement also contains the following cost-splitting provision: "[t]he costs of the arbitration shall be borne equally by each party and each party shall be responsible for their own legal fees." (*Id.*)

On February 19, 2026, Plaintiff filed his Opposition.  (Doc. No. 13.)  Attached to Plaintiff's Opposition is his Declaration.  (Doc. No. 13-1.)  Therein, he avers, among other things, that he "had never heard of an entity called Healthcare Payroll 2, LLC," that "after filing this lawsuit, [he] learned from [his] attorneys that King David was saying that [he] received an email from HostedTime on December 8, 2020, while [he] was at home recovering from a surgery," and that he "was not aware of any arbitration agreement until after [he] filed this lawsuit and [his] lawyers got the agreement from King David's attorneys."  (*Id.* at ¶¶ 6–8.)  He further avers that "[n]o one explained . . . the arbitration agreement" and that he "was not provided with any copies of the documents King David says I signed at that time, including the arbitration agreement."  (*Id.* at ¶ 9.)  Although he makes these averments, he represents in his Opposition that "he signed the arbitration agreement electronically, even though he does not recall doing so."  (Doc. No. 13, PageID #93.)

King David filed its Reply on March 12, 2026.  (Doc. No. 15.)  Accordingly, King David's Motion is ripe for review.

## II.     Standard of Review

The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision establishes 'a liberal federal policy favoring arbitration agreements'" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the

4

contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The FAA further provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If the court finds that a party's claims are referable to arbitration, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## III.   Analysis

In its Motion, King David contends that the Court should compel arbitration and dismiss, or alternatively stay, this case pending arbitration.  King David argues that (1) there is an agreement to arbitrate, (2) the Agreement covers Plaintiff's claims, and (3) Plaintiff's statutory claims are subject to arbitration.  (Doc. No. 11-1, PageID #67–71.)  Plaintiff does not dispute Defendant's second and third arguments that the Agreement covers his claims and that his statutory claims are indeed subject to arbitration.  Plaintiff only disputes King David's first argument, i.e., that there is an agreement to arbitrate.  Plaintiff's position is that (1) King David cannot compel arbitration under the Agreement because it is not a party to the Agreement, (2) the Court should find that the Pharmacy cannot enforce the Agreement, and (3) the Court should find that the delegation provision in the Agreement is unconscionable.  (Doc. No. 13, PageID #86–98.)  Plaintiff further argues that if the Court decides to compel arbitration, it should sever the Agreement's cost-splitting provision.  (*Id.* at PageID #98–100.)

5

King David responds in its Reply that (1) the delegation clause is enforceable and not unconscionable, (2) pursuant to the delegation clause, Plaintiff's non-signatory objection must be decided by the arbitrator, and (3) pursuant to the delegation clause, the arbitrator must decide whether to sever the Agreement's cost-splitting provision." (Doc. No. 15, PageID #140–151.)

Based on the parties briefing, the Court's analysis is thus narrowed to the following issues: (1) whether the delegation clause is enforceable, (2) whether the delegation clause is unconscionable, (3) whether the arbitrator or the Court should decide Plaintiff's non-signatory objection and (4) whether the arbitrator or the Court should sever the cost-splitting provision. As explained in greater detail below, the Court finds that the delegation clause is enforceable and not unconscionable. The Court further finds that the arbitrator should decide Plaintiff's non-signatory objection—specifically whether King David can enforce the Agreement. Finally, the Court declines to sever the cost-splitting provision because this issue must be decided by the arbitrator in the first instance.

### A.      The arbitrator must decide whether King David can enforce the Agreement

The Agreement provides that "[t]his agreement is subject to the Federal Arbitration Act and any dispute regarding arbitrability shall be delegated to the arbitrator referenced herein in section G." (Doc. No. 11-2, PageID #75.)   Plaintiff asserts that "King David is a party to this lawsuit, but it is not a party to the arbitration agreement between Cardano and Healthcare Payroll 2, LLC, and it does not claim to be." (Doc. No. 13, PageID #88.)  Plaintiff, pointing the Court to *E.E.O.C. v. Waffle House*, 534 U.S. 279 (2002), argues that "[b]ecause there is no valid arbitration agreement between the parties to this case, King David and Cardano, this Court must DENY Defendant King David's Motion in its entirety and permit the parties to continue litigating this case in this tribunal, not in an arbitral forum." (*Id.*)  King David's response is to direct the Court to *Swiger v. Rosetter*, 989 F.3d

501 (6th Cir. 2021) to support its position that Plaintiff's objection "concerns enforceability, and under controlling law, that is a gateway arbitrability question that falls within the Agreement's delegation provision." (Doc. No. 15, PageID #141.)

Generally, the Court reviews whether the parties agreed to arbitration. *See, e.g., Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). "The FAA, however, allows parties to agree that an arbitrator, rather than a court, will determine gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)) (cleaned up).  Such an agreement (i.e. a delegation clause) requires "clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability." *Id.* (citing *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 844 (6th Cir. 2021)) (cleaned up).

*Swiger* is directly on point here.  In *Swiger*, a non-signatory defendant to an arbitration agreement attempted to enforce it against the signatory plaintiff.  *Swiger*, 989 F.3d at 507.  The plaintiff argued that the non-signatory defendant lacked standing to enforce the agreement.  *Id.* The defendant responded that his ability to invoke the agreement "must be considered by an arbitrator in the presence of a delegation provision." *Id.*  The Sixth Circuit agreed with the defendant.  The Sixth Circuit held that "whether [defendant] can enforce the arbitration agreement against [plaintiff] presents a question of arbitrability that Swiger's arbitration agreement delegated to an arbitrator." *Id.*

Here, if the delegation clause is valid, then, under *Swiger*, the arbitrator must decide whether King David can enforce the Agreement. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (reversing district court's decision to deny motion to compel arbitration and holding that the

arbitrator must decide whether a non-signatory could enforce the arbitration agreement). The Court is cognizant that there is nothing in the record establishing whether King David is an "affiliate" of Healthcare Payroll 2 LLC such that it can enforce the Agreement. But the Sixth Circuit has cautioned that "[a] valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear 'wholly groundless.'" *Swiger*, 989 F. 3d at 505 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019)). Therefore, even assuming King David's ability to enforce the arbitration agreement is "wholly groundless," the arbitrator, and not the Court, must determine if King David can enforce the agreement. *Laudato v. BD Zanesville OPCO, LLC*, No. 2:24-cv-03356, 2025 U.S. Dist. LEXIS 183867, at *7 (S.D. Ohio Sept. 18, 2025) (finding that "[w]here, as here, the parties have clearly delegated such questions to the arbitrator, courts must compel arbitration even if the issue involves a nonsignatory" and that "[t]his remains true even if this Court finds 'wholly groundless' the argument that the arbitration agreement applies to a nonsignatory"); *Pacheco v. Ford Motor Co.*, No. 2:22-cv-11927, 2025 U.S. Dist. LEXIS 152196, at *21 (E.D. Mich. Aug. 7, 2025) (rejecting the argument that a nonsignatory could not enforce the delegation clause and finding that the arbitrator must decide whether the nonsignatory could enforce the arbitration agreement).[2]

To determine whether the clause is valid, the Sixth Circuit's opinion in *Swiger* provides guidance:

Only a specific challenge to a delegation clause brings arbitrability issues back

---

[2] *See also Bernardoni v. FCA US LLC*, No. 23-12881, 2024 U.S. Dist. LEXIS 110806, at *11 (E.D. Mich. June 20, 2024) (rejecting the argument that "the language of the dealer agreement does not indicate that they agreed to delegate to an arbitrator questions about the arbitrability of claims involving non-signatories like the manufacturer"); *Lyman v. Ford Motor Co.*, No. 21-10024, 2023 U.S. Dist. LEXIS 52875, at *10 (E.D. Mich. Mar. 28, 2023) ("Here, the Court has already decided under binding Sixth Circuit precedent that, where an arbitration agreement contains a clear delegation clause, the arbitrator must determine issues of arbitrability—including any challenge to Ford's ability to enforce the arbitration agreement as a non-signatory").

within the court's province. *Rent-A-Center*, 561 U.S. at 72 (unless a party "challenge[s] the delegation provision specifically," the court must "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator"). A party seeking to avoid the effects of a delegation clause should raise a challenge at least in its opposition to a motion to compel arbitration. *Id.* If a party fails to "acknowledge their delegation provision[], let alone challenge [it] (below, or on appeal)," they forfeit any such challenge. *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 399 (6th Cir. 2017). A party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, but merely challenging the entire agreement will not suffice. *See Rent-A-Center*, 561 U.S. at 74 (surmising that if the party challenged as unconscionable the delegation clause itself rather than just the entire arbitration agreement, then the court could have considered that challenge); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018).

*Swiger*, 989 F.3d at 506–07.

Plaintiff brings two challenges to the delegation clause (1) that the delegation clause is not "clear and unmistakable" and (2) even if the clause is "clear and unmistakable," "the fee-splitting provision in the agreement renders the delegation provision unconscionable and unenforceable." (Doc. No. 13, PageID #89, 98.)  The Court addresses each argument in turn below.

### 1. The delegation clause is clear and unmistakable

Plaintiff argues that "the 'delegation provision' is a single line buried in the introductory paragraph to the agreement, and it states simply, '[t]his agreement is subject to the [FAA] and any dispute regarding arbitrability shall be delegated to the arbitrator as referenced herein in section G.'" (Doc. No. 13, PageID #90.)  He asserts that "the agreement delegates only 'disputes regarding arbitrability'" and that "[i]t does not mention any dispute relating to 'enforceability' of the agreement, which is a separate issue." (*Id.* at PageID #91.)  According to Plaintiff, "Sixth Circuit cases explicitly recognize that whether a non-signatory can compel a signatory to arbitration is a matter of 'enforceability,' not 'arbitrability.'" (*Id.*)  Further, Plaintiff assert that "this case is on all fours with [*Westlake Servs., LLC v Chandler*, 226 N.E.3d 478 (Ohio App. 8th Dist. 2023)]:  there are multiple

9

avenues for selecting an arbitrator and different options for different rules to apply, thus it is entirely unclear who is supposed to decide which issues, and under which rules." (*Id.*)

King David responds that the delegation clause "constitutes clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to the arbitrator." (Doc. No. 15, PageID #141–42.)  It then argues that "Plaintiff focuses on the Agreement's reference to AAA rules and argues—relying on [*Westlake*]—that the Agreement does not clearly delegate arbitrability," but "that argument addresses a theory that Defendant does not invoke." (*Id.* at PageID #142.)  King David next argues that "the Sixth Circuit has explicitly held that whether a non signatory may enforce an arbitration agreement presents a question of arbitrability that may be delegated to the arbitrator." (*Id.*)  Finally, King David argues that "Plaintiff suggests that the delegation language does not constitute 'clear and unmistakable' evidence of delegation because it appears within the broader arbitration provision, rather than as a stand-alone clause," but "[t]hat argument is also foreclosed by applicable precedent." (*Id.* at PageID #142–43.)

Simply put, the Court finds that the delegation clause is clear and unmistakable.  Plaintiff's characterization that it is "buried" is untenable.  The clause is located on the first page under the first section titled "Arbitration Explained," which is underlined and in bold font. (Doc. No. 11-2, PageID #75.)  It expressly provides that "any dispute regarding *arbitrability* shall be delegated to the arbitrator referenced herein in section G." (*Id.* (emphasis added).)  This provision is clear and unambiguous— the plain meaning of "arbitrability" includes "enforcement." *Rent-A-Center*, 561 U.S. at 68–69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' *such as whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy") (emphasis added); *Versatex, LLC v. Duracell Mfg., LLC*, No. 1:23-cv-184, 2024 U.S.

10

Dist. LEXIS 87615, at *9 (S.D. Ohio May 15, 2024) (finding that "'arbitrability' encompasses questions of enforcement"); *Simpson v. Nissan of N. Am., Inc.*, No. 3:22-cv-00747, 2023 U.S. Dist. LEXIS 138728, at *15 (M.D. Tenn. Aug. 9, 2023) ("A review of caselaw confirms that, in the ordinary and accepted terminology of arbitration law, 'arbitrability' does, in fact, include questions of enforceability"); *Arbitrability*, Black's Law Dictionary (12th ed. 2024) ("The status of a dispute's being or not being within the jurisdiction of arbitrators to resolve, *based on whether the parties entered into an enforceable agreement to arbitrate*, whether the dispute is within the scope of the arbitration agreement, whether any procedural prerequisites to arbitration have been satisfied, and whether the applicable law permits the arbitrators to resolve the subject matter of the dispute") (emphasis added).

The Court is not persuaded by Plaintiff's citation to *Westlake*. There, the Ohio Court of Appeals held that the parties had not agreed to delegate threshold issues of arbitrability, including the issue of waiver, to the arbitrator. The *Westlake* court reasoned:

> There is no express "delegation clause" in the arbitration agreement. There is nothing in the arbitration agreement that expressly states that the parties agree to arbitrate questions related to arbitrability, the interpretation of the arbitration agreement, the validity, enforceability or scope of the arbitration agreement or any waiver of the right to arbitrate. Westlake Services acknowledges this fact but contends that such "threshold questions of arbitrability" should have, nevertheless, been delegated to an arbitrator based on the parties' "incorporation by reference" of AAA rules in the arbitration agreement.

> Westlake Services argues that, based on the agreement's reference to "AAA rules," the arbitration agreement necessarily incorporated Rule 14 of the AAA's Consumer Arbitration Rules ("Rule 14") into the parties' agreement. It contends that "Rule 14 makes clear that the arbitrator has the full power to rule upon his or her jurisdiction, including issues involving the existence, scope, or validity of the arbitration agreement" and that, under the AAA rules, "all questions of arbitrability that might impact an arbitrator's jurisdiction are delegated to the arbitrator to decide," including "the question of waiver."

11

Here, the parties to the buyer's order agreed, upon the election of either party, to arbitrate any "dispute" — defined as "any controversy or claim by or between us [Clerac] (including our officers, directors, employees, affiliates or representatives) and you [Chandler] of any kind or nature whatsoever (including any controversy or claim relating to or arising out of our financing of your purchase of the Vehicle, if applicable)" — "in accordance with the Federal Arbitration Act and the rules of the American Arbitration Association ('AAA') or any other national or regional arbitration organization [Chandler] select[s] that is acceptable to [Clerac]."

Even assuming the issue of waiver by litigation conduct could be properly delegated to an arbitrator, we agree with the trial court that the arbitration agreement in this case does not contain "clear and unmistakable" evidence that the parties intended an arbitrator to decide any issues of waiver by litigation conduct. Accordingly, the trial court did not err in deciding that issue itself.

*Westlake*, 226 N.E.3d at 489–90.

The *Westlake* court's decision hinged on two things that are not present here: (1) that the agreement lacked a delegation clause; and (2) that that the AAA rules themselves were insufficient to delegate issues to the arbitrator. But, as explained above, the Agreement *does* contain a delegation clause. Moreover, King David has not argued—nor could it as the AAA rules are not incorporated into the Agreement—that the Agreement delegated issues of arbitrability to the arbitrators through incorporation of the AAA rules. Simply put, *Westlake* is not relevant to this dispute.

For all these reasons, the Court finds that the Agreement contains clear and unmistakable evidence that issues of arbitrability would be delegated to the arbitrator.

> **2. The fee-splitting provision does not render the delegation clause unconscionable**

Plaintiff next argues that "the cost-splitting provision in the arbitration agreement renders the delegation provision both procedurally and substantively unconscionable." (Doc. No. 13, PageID #97.) As to procedural unconscionability, Plaintiff argues that he "was on a medical leave, when an email showed up at home, asking him to 'e-sign' a passel of onboarding documents," that "[n]o one

12

from King David called him to walk him through the documents," that "[h]e does not even remember getting the email or signing these documents," that "[h]e certainly did not negotiate any terms," and that the opt-out provision "is buried in the agreement." (*Id.*) As to substantive unconscionability, Plaintiff argues that this case is similar to the non-binding decision in *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021). (*Id.*) And Plaintiff asserts that they would need to "'pre-arbitrate' complicated issues requiring extensive discovery, for which Cardano would pay half of the arbitration fees and costs." (*Id.* at PageID #98.) He also asserts that "[h]e does not have the resources necessary to pay half of an arbitration filing fee, administrative costs, stenography costs, room rental, or an arbitrator's hourly or per diem rate for however long these proceedings may take." (*Id.*)

King David asserts that the delegation provision is neither substantively unconscionable nor procedurally unconscionable. As to substantive unconscionability, King David argues that "[t]he party opposing arbitration must present actual evidence demonstrating that arbitration is likely to impose prohibitive costs in the particular dispute" and that "the relevant inquiry is not the potential cost of arbitrating the merits of the dispute, but whether the cost of arbitrating arbitrability itself would be prohibitively expensive." (Doc. No. 15, PageID #144.) Under this standard, King David argues that Plaintiff "offers no evidence regarding the likely costs of arbitrating this particular case, and instead relies only on generalized speculation about arbitration fees and arbitrators' hourly rates. Additionally, he has not offered any evidence regarding his salary as a pharmacist during his employment." (*Id.*) As to procedural unconscionability, King David argues that "[c]ourts applying Ohio law have repeatedly held that such opt-out provisions defeat claims of procedural unconscionability because they preserve the employee's ability to reject arbitration after reviewing the Agreement." (*Id.* at PageID #146.) King David further argues that "Plaintiff's remaining

13

argument—that the Agreement was sent electronically and that he does not recall reviewing or signing it—does not establish procedural unconscionability" because "Plaintiff does not dispute that the Agreement bears his electronic signature, and a party who signs a contract is presumed to know and assent to its contents, even if he later claims not to have read or remembered the document." (*Id.*)

In Ohio, "[u]nconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (2008) (quoting *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183 (Ohio 1993)).  The doctrine of unconscionability consists of two separate concepts:

> (1) substantive unconscionability, *i.e.,* unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.,* individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable.

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (quoting *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 758 N.E.2d 1173, 1181 (Ohio Ct. App. 8th Dist. 2001)).  "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable."  *Taylor*, 884 N.E.2d at 20.

The Court starts, and ends, its analysis with procedural unconscionability.  In *Taylor*, the Ohio Supreme Court found:

> Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' "age, education, intelligence, business acumen and experience ... who drafted the contract ... whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities,

14

ignorance, illiteracy or inability to understand the language of the agreement, or similar factors."

*Taylor*, 884 N.E.2d at 22–23 (internal citations omitted).

Here, the opt-out provision weighs heavily against a finding of procedural unconscionability. For example, in *Bruster v. Uber Techs. Inc.*, 188 F. Supp. 3d 658 (N.D. Ohio 2016), the plaintiff argued that a delegation clause was unconscionable and unenforceable. *Id.* at 664. The *Bruster* court disagreed. It reasoned that while "Uber may have had a stronger bargaining position relative to Plaintiff," and that it "drafted the June 2014 Agreement," "the terms of the June 2014 Agreement allow Plaintiff to opt out of the delegation provision without any consequences or changes in the parties' employment relationship." *Id.* It also found that "[t]he opt-out process was fairly painless: Plaintiff only needed to email his name and his intent to opt out to Uber." *Id.* The court thus concluded that "the delegation provision was conscionable because 'alterations in the printed terms [of the arbitration provisions] were possible,' with no other change to Plaintiff's working relationship with Uber." *Id.* (quoting *Scovill v. WSYX/ABC, Sinclair Broadcast Group, Inc.*, 425 F.3d 1012, 1017 (6th Cir. 2005)).

Here, the Agreement contains an opt-out clause like the clause in *Bruster*. That clause provides:

> Limited Employee Right to Rescind this Mandatory Sub-Agreement: Employee or, in the event of Employee's incapacity, Employee's authorized representative have the right to rescind this arbitration agreement by notifying the Facility in writing within thirty (30) days of the employment date. Such notice must be sent via certified mail to the attention of the administrator of the Facility and the notice must be post marked within thirty (30) days of the employment date. The notice may also be hand delivered to the administrator within the same thirty (30) day period. The filing of a claim in a court of law within the thirty (30) days provided for above will automatically rescind the arbitration agreement without any further action by Employee or Employee's authorized representative.

15

(Doc. No 11-2, PageID #78.) This clause gave Plaintiff "the right to rescind" the Agreement, and there is nothing in the Agreement or the record suggesting that he would have suffered any adverse employment consequences if he invoked that "right." And the opt-out provision defeats his claim that "[h]e certainly did not negotiate any terms." *Gyrnko v. Sears Roebuck & Co.*, No. 1:13 CV 2482, 2014 U.S. Dist. LEXIS 1966, at *16 (N.D. Ohio Jan. 6, 2014) ("if an employee does not agree with the terms or conditions of the Agreement she can opt out of the Agreement. Therefore, the sole fact that the Agreement does not include a provision allowing employees to 'negotiate [its] terms or conditions' does not render the contract unconscionable"). The Court further rejects Plaintiff's argument that the opt-put provision is "buried in the agreement," because the opt-out provision is contained in a standalone section entitled "Limited Employee Right to Rescind this Mandatory Arbitration Sub-Agreement," which is partially located on the same page where Plaintiff signed the Agreement.

Plaintiff's remaining arguments do not move the needle. While Plaintiff may not remember receiving the agreement or even signing it, he does not dispute that he signed it. *Vlad v. DG Trucking, Inc.*, No. 1:18CV2024, 2021 U.S. Dist. LEXIS 226336, at *16 (N.D. Ohio Nov. 24, 2021) ("If a person can read and is not prevented from reading what he signs, he alone is responsible for reading what he signs"). Moreover, his employer was not required to "walk him through the documents" with him as he contends. *Id.* ("Ohio law does not require the drafting party [to] explain every term of the contract to the other"); *Abm Farms v Woods*, 692 N.E.2d 574, 578 (Ohio 1998) ("The law does not require that each aspect of a contract be explained orally to a party prior to signing"). The Court therefore finds that Plaintiff's arguments are insufficient to establish procedural unconscionability. *Overman v. Ganley Ford West, Inc.*, No. 1:15 CV 1581, 2015 U.S. Dist. LEXIS 169601, at *7–8

16

(N.D. Ohio Dec. 17, 2015) ("Further, Mr. Overman has failed to demonstrate that the Arbitration Agreement is unconscionable, as both Parties agreed that unresolved complaints of workplace wrongdoing would be submitted to arbitration and Mr. Overman voluntarily signed the Agreement; the language of the Arbitration Agreement is clear; and, Defendants were not required to explain each aspect of the contract prior to signing").

For all these reasons, the Court finds that the delegation clause is not procedurally unconscionable. *Bruster*, 188 F. Supp. 3d at 664; *see also Lee v. Omnicare/CVS Health/CVS*, No. 1:21-cv-427, 2022 U.S. Dist. LEXIS 113224, at *8 (S.D. Ohio June 7, 2022) (recommending to grant the defendant's motion to compel when the agreement contained an opt-out provision and there was "no dispute that Plaintiff had notice of, and manifested assent to, the terms and conditions of the Arbitration Agreement"), adopted by 2022 U.S. Dist. LEXIS 112694, at *2 (June 24, 2022). The Court therefore finds that the delegation clause is enforceable.[3]

### B.  The Court declines to sever the fee-splitting provision

Plaintiff next argues that the Court must sever the cost-splitting provision from the arbitration agreement pursuant to *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). (Doc. No. 13, PageID #99.) Plaintiff asserts that "forcing Cardano to pay half of the costs of arbitrating the merits of his statutory employment claims would deter him, and others similarly situated, from initiating an arbitration to vindicate his rights under the ADA, the FMLA, and ERISA." (*Id.*) He

---

[3] Because the Court finds that Plaintiff cannot establish procedural unconscionability, the Court declines to address the merits of his substantive unconscionability argument. *See*, *e.g.*, *Baker v. Fremont Co.*, No. 3:24 CV 1762, 2025 U.S. Dist. LEXIS 139385, at *17–18 (N.D. Ohio July 22, 2025) ("Thus, the agreement is not procedurally unconscionable. Because Plaintiff has not demonstrated procedural unconscionability the Court need not examine substantive unconscionability as a showing on both prongs of the test is required"); *Madhat v. Lipsey Communs., LLC*, No. 5:20-cv-764, 2020 U.S. Dist. LEXIS 161272, at *16 (N.D. Ohio Sept. 3, 2020) ("Plaintiffs have failed to show procedural unconscionability which, in turn, has doomed their entire unconscionability argument because Ohio law requires plaintiffs to show *both* procedural and substantive unconscionability") (emphasis in original).

17

further asserts that "[f]rom his vantage point, with limited resources in the form of a retirement account that he was relying on for later in life, arbitration is out of reach," and that [h]ad he realized what kind of costs he would be forced to bear, he would not have pursued his claims beyond the EEOC."  (*Id.* at PageID #99–100.)

King David responds that "under *Rent-A-Center*, when an arbitration agreement contains a delegation clause, courts may consider only challenges directed specifically at the delegation provision itself."  (Doc. No. 15, PageID #149.)  King David asserts that "court[s] applying *Rent-A-Center* have consistently held that once a delegation clause is valid, challenges to fee-splitting provisions must be resolved by the arbitrator, not the Court."  (*Id.* at PageID #150.)

The Court agrees with King David.  As explained by the Sixth Circuit:

> In *Rent-A-Center*, the Court held that "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that [arbitration] agreement" but, in the absence of a challenge to the agreement to arbitrate specifically, arguments related to "the validity of the Agreement as a whole" are "for the arbitrator." 561 U.S. at 71-72 (emphasis added). Consistent with *Rent-A-Center* and *Coinbase*, Hines's claims regarding the alleged substantive unconscionability of unrelated provisions in the same Lease Waiver do not prevent the district court from enforcing the Lease Waiver's arbitration provision.[] Thus, on remand, if the district court ultimately determines that the remainder of the *Stout* factors are met, *Hines's separate challenges to the validity of the Lease Waiver and Club Activity Waiver are severable and "must go to the arbitrator." Buckeye Check Cashing*, 546 U.S. at 449; *Great Earth Cos.*, 288 F.3d at 890 ("Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator.").

*Hines v. Nat'l Ent. Grp., LLC*, 140 F.4th 322, 333 (6th Cir. 2025) (emphasis added); *see also Chaudhri v. StockX, LLC (In re StockX Customer Data Sec. Breach Litig.)*, 19 F.4th 873, 886 (6th Cir. 2021) ("Because a contract exists and the delegation provision itself is valid, we have 'no business weighing the merits' of any challenge to the arbitration agreement or the October 2018

18

Terms"). Therefore, in the presence of a valid delegation clause, challenges to how costs are allocated must be decided by the arbitrator. *Dean v. Draughons Junior College, Inc.*, 917 F. Supp. 2d 751, 763 (M.D. Tenn. Jan. 16, 2013) (holding Kentucky law "cost prohibitiveness" defense was for the arbitrator to decide based on valid delegation clause); *Halliday v. Beneficial Fin. I, Inc.*, No. 2:12-cv-708, 2013 U.S. Dist. LEXIS 26140, at *15 (S.D. Ohio Feb. 26, 2013) ("The fairness of allocating costs so that defendants pay for only one day of arbitration may be relevant to whether the arbitration clause itself is unconscionable, an issue the Court must leave for the arbitrator"); *Sajay Rai v. Ernst & Young, LLC*, No. 09-13194, 2010 U.S. Dist. LEXIS 93196, at *13 (E.D. Mich. Sept. 8, 2010) (rejecting claim that the "fee splitting makes it too expensive to litigate his entire discrimination claim" because it was "not the limited question of whether the Arbitration Agreement is valid and enforceable").[4] While Plaintiff "is certainly entitled to 'an opportunity, prior to arbitration *on the merits*, to demonstrate that' arbitration would be cost-prohibitive," his "arguments are for an arbitrator, not the Court to decide." *Singer-Reed v. Planes Moving & Storage, Inc.*, No. 1:22-cv-32, 2024 U.S. Dist. LEXIS 161787, at *11 (S.D. Ohio Sept. 6, 2024) (quoting *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003)) (emphasis in original); *see also Doe v. Larry Flynt's Hustler Club*, No. 1:20-CV-1195, 2020 U.S. Dist. LEXIS 186248, at *16 (N.D. Ohio Oct. 7, 2020) (finding in the face of a delegation clause the issue of whether an attorney fees' clause was

---

[4] *See also Martin v. Binance Holdings Ltd.*, No. 25-CV-22100-RAR, 2026 U.S. Dist. LEXIS 53532, at *23 (S.D. Fla. Mar. 16, 2026 (finding objections to the agreement's "cost-splitting model" are "for Plaintiffs to raise before an arbitrator"); *Hall v. Talladega Hous. Auth.*, No. 1:25-cv-647-CLM, 2026 U.S. Dist. LEXIS 47892, at *10 (N.D. Ala. Mar. 9, 2026) (declining to consider, in the face of a valid delegation clause, the plaintiff's argument that she "may incur higher costs because of the arbitration agreement's cost splitting provision"); *Seifert v. United Built Homes, LLC*, 684 F. Supp. 3d 555, 567 (N.D. Tex. 2023) ("Plaintiffs' unenforceability argument relating to the arbitration provision's cost-splitting arrangement has been delegated to the arbitrator"); *Taylor v. TA Operating, LLC*, No. 2:22-cv-00947 WBS DMC, 2023 U.S. Dist. LEXIS 6318, at *23 (E.D. Cal. Jan. 12, 2023) ("The remaining arguments concerning allocation of fees and costs, discovery limits, and obtaining counsel likewise do not go to the court's determination of the delegation clause's enforceability").

unconscionable was for the arbitrator to decide) (Barker, J.).

For these reasons, the Court declines to sever the cost-splitting provision.

### C.      The Court stays the proceedings

King David argues in its Motion that "[b]ecause Plaintiff's claims are each subject to the valid and enforceable Arbitration Agreement, the Court should dismiss this action."  (Doc. No. 11-1, PageID #71.)  It alternately argues that "the Court should stay these proceedings pending arbitration, as the FAA requires a stay 'until such arbitration has been had in accordance with the terms of the agreement.'" (*Id.*)  In his Opposition, Plaintiff points the Court to *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) asserting that "the Supreme Court held that the FAA prohibits courts from dismissing a case in its entirety in the face of an enforceable arbitration agreement" and argues that "the Court must deny King David's request to dismiss Cardano's case and should stay the proceedings only if it finds that the parties to this case are obligated to arbitrate Cardano's claims."  (Doc. No. 13, PageID #87.)  King David does not respond to this argument in its Reply.

King David's silence is not surprising since *Smith* binds the Court here.  In *Smith*, the Supreme Court held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, §3 of the FAA compels the court to stay the proceeding."  *Smith*, 601 U.S. at 478.  Because Plaintiff has requested a stay, the Court declines King David's invitation to dismiss this action and instead stays the matter pending arbitration.  The Court also administratively closes the case during the pendency of the stay subject to reopening upon request by the parties.  *Id*. ("District courts can, of course, adopt practices to minimize any administrative burden caused by the stays that §3 requires"); *Hill v. Checkr, Inc.*, No. 4:24CV1628, 2025 U.S. Dist. LEXIS 159340, at *21 (N.D. Ohio Aug. 15, 2025) ("Pursuant to *Smith* . . . the above-captioned case is not dismissed but

20

rather stayed and removed from the Court's active docket subject to re-opening upon written motion of either party"); *Pacheco*, 2025 U.S. Dist. LEXIS 152196 at *32 (staying case pending arbitration and administratively closing the case); *Harnick v. Claiborne Mgmt. LLC*, No. 3:23-cv-01010, 2024 U.S. Dist. LEXIS 199882, at *9–10 (M.D. Tenn. Nov. 4, 2024) (same). Within 30 days of the final ruling by the arbitrator, the parties shall file a joint status report regarding the status of this case and the final ruling by the arbitrator.

## IV.     Conclusion

For the reasons set forth herein, the Motion (Doc. No. 11) is GRANTED.  This case is hereby stayed pending arbitration.  The Clerk is instructed to administratively close this case.  Within 30 days of the final ruling by the arbitrator, the parties shall file a joint status report regarding the status of this case and the final ruling by the arbitrator.

**IT IS SO ORDERED.**

 _s/Pamela A. Barker_
PAMELA A. BARKER
Date:  July 21, 2026                    U. S. DISTRICT JUDGE

21